[Nos. 83525-0; 83613-2.    En Banc.]
Argued October 26, 2010.    Decided April 14, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WAYNE ROBINSON, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. FRANCISCO JAVIER MILLAN, *Petitioner*.

*Thomas E. Doyle*, for petitioner *Robinson*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for petitioner Millan.

*Jon Tunheim, Prosecuting Attorney for Thurston County*, and *Carol L. La Verne, Deputy*, and *Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Stephen D. Trinen, Deputy*, for respondent.

¶1 OWENS, J. — The petitioners in these two consolidated cases seek to challenge, for the first time on appeal, the admissibility of evidence against them. In both cases, the trials were concluded prior to the United States Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), a case that limited the circumstances in which police may conduct a warrantless search of an automobile incident to arrest. Though the trials were concluded, the cases were still pending on direct appeal at the time *Gant* was decided. In Francisco Millan's case, the Court of Appeals concluded that any error was waived by his failure to object to the admission of evidence at trial. *State v. Millan*, 151 Wn. App. 492, 499-500, 212 P.3d 603 (2009), *review granted*, 168 Wn.2d 1005, 226 P.3d 781 (2010). In Michael Robinson's case, the Court of Appeals considered and rejected his argument that the search was unconstitutional without considering the effect of *Gant*. We conclude that, in this circumstance, principles of issue preservation and waiver do not preclude criminal defendants from raising a constitutional objection for the first

time on appeal. We therefore reverse the Court of Appeals in both cases.[1] However, because neither the petitioners nor the State had the opportunity or incentive to develop the record, we remand each case to the superior court for a suppression hearing in light of *Gant* and its progeny.

## FACTS

### A. *Millan*

¶2  Shortly before 1:00 AM on April 1, 2007, police received a report of a disturbance in Tacoma. Officers Christopher Shipp and Timothy Caber responded, contacted the reporting parties, and located the vehicle that was the source of the disturbance. The officers pulled up behind the vehicle and activated the police car's lights.

¶3  Once the vehicle was stopped, Officers Shipp and Caber approached it; Officer Caber approached the driver, Millan, and Officer Shipp approached the passenger, Millan's wife. Officer Shipp reported that the passenger "appeared to be very upset, had been crying, and appeared fearful." Millan 2 Verbatim Tr. of Proceedings at 65. Officer Caber, meanwhile, asked Millan to step out of the vehicle and then placed him in wrist restraints. Because Millan repeatedly called out his wife's name and gave her what Officer Caber described as "pretty hard and intimidating looks," Officer Caber placed Millan in the backseat of the police car. *Id.* at 106.

¶4  While Millan was under arrest and located in the backseat of the police car, Officer Caber conducted a search of the vehicle incident to the arrest. On the floor of Millan's car, between the driver's seat and the driver's side backseat, Officer Caber located a handgun.

¶5  As a result of the stop and the search, Millan was charged with driving with a suspended license in the first degree and, because he had previously been convicted of a

---

[1] We do not, of course, reverse those portions of *State v. Robinson*, noted at 151 Wn. App. 1030 (2009), on which we did not grant review.

felony, unlawful possession of a firearm in the first degree. Millan pleaded guilty to driving with a suspended license but proceeded to a jury trial on the unlawful possession of a firearm charge. At no time did Millan object to the admission of the firearm found in his vehicle; his motion in limine made no reference to the firearm nor did he object to its discussion at trial or its admission into evidence. Millan was subsequently convicted and, on December 7, 2007, sentenced to 42 months in prison.

¶6 Millan appealed his conviction to the Court of Appeals, arguing that the trial court should have granted his motion for a new trial based on jury misconduct. He submitted his brief on October 7, 2008. While his appeal was pending, the United States Supreme Court released its decision in *Gant* on April 21, 2009. On May 7, 2009, Millan filed a supplemental brief with the Court of Appeals, arguing that the court must reverse his conviction because the vehicle search incident to arrest was unconstitutional under *Gant*. The Court of Appeals agreed that *Gant* applied to Millan's case, *Millan*, 151 Wn. App. at 496, but held that Millan waived any error by failing to object to the admission of the evidence at trial, *id.* at 499-500.

### B. Robinson

¶7 On the afternoon of July 11, 2007, Trooper Tony Doughty was waiting at the intersection of Yelm Highway and Henderson Boulevard, having completed his shift at the Department of Labor and Industries building in Tumwater. As he waited, he heard vehicles that "sounded like they were moving at a very high rate [of speed]" and then, hearing the sound of screeching tires, looked up to see two cars proceeding east on Yelm Highway, turning north onto Henderson Boulevard, and breaking traction as they turned. Robinson 1 Verbatim Report of Proceedings at 29. A white Acura was followed by a blue Honda. Trooper Doughty activated his lights and siren and pursued the two vehicles. Though he lost sight of the vehicles for a brief time when they entered a curve in the road, he regained sight

shortly thereafter and estimated they were traveling at around 80 MPH as they traversed a "heavily traveled road" with crosswalks at 4:30 in the afternoon. *Id.* at 31.

¶8 The three cars, including Trooper Doughty's, turned right onto North Street, and Trooper Doughty observed the white Acura drive through a three-way stop. The blue Honda stopped and, as Trooper Doughty pulled up next to it, the driver yelled, " 'They just stole my vehicle.' " *Id.* at 32-33. Trooper Doughty then continued to pursue the white Acura and stopped behind it on the access road to Washington Middle School. As Trooper Doughty arrived, he observed the driver of the Acura, Daniel Smith, getting out of the vehicle, so Doughty drew his weapon and ordered the driver to get on the ground, which Smith did. As Doughty approached Smith, the passenger of the Acura, Robinson, got out of the vehicle and approached Doughty. Trooper Doughty ordered Robinson to the ground, and Robinson complied. Trooper Doughty then placed handcuffs on Smith and returned to his car to retrieve a second set of handcuffs, which he placed on Robinson.

¶9 After Smith and Robinson were on the ground and restrained, the driver of the blue Honda arrived, repeating to Trooper Doughty that the Acura had been stolen from his yard.[2] Trooper Doughty had the driver return to his car until backup arrived. Doughty then took Smith and Robinson to sit in the shade because it was a hot day and informed Smith that he was in custody for reckless driving. Approaching the Acura, Trooper Doughty noticed that the ignition was "punched" and falling off the ignition console, which he recognized as being "very common" in stolen vehicles. *Id.* at 39-40. Trooper Doughty then conducted a vehicle search incident to the arrest of Smith for reckless driving. During this search, which continued once other officers arrived, the officers discovered a number of items, including a loaded handgun that had been burgled from a

---

[2] At some later point, Trooper Doughty learned that the driver of the blue Honda was mistaken and the Acura had not been stolen from him. Another officer subsequently learned that Smith had permission to use the vehicle.

home the previous day. Upon discovering the handgun, Doughty informed Robinson that he was under arrest for possession of stolen property and read him his *Miranda* rights. (*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).)

¶10 Following the search, Robinson allegedly told Detective Doug Clevenger that he assisted Smith during the previous day's burglary. Robinson went on to identify some items stolen during the burglary, offer to help get a stolen safe back, state that he had handled the firearm, and state that Smith had a methamphetamine lab in the trunk of the car.[3] At trial, Robinson denied participating in the burglary or that he had ever acknowledged his participation.

¶11 Robinson was convicted of residential burglary, theft of a firearm, first degree unlawful possession of a firearm, first degree theft, and unlawful possession of methamphetamine while armed with a firearm. At no time prior to or during trial did Robinson object to the search of the car. Robinson appealed his conviction on a number of grounds. In his statement of additional grounds, Robinson, pro se, alleged for the first time that the search of the Acura was unconstitutional. This occurred prior to the United States Supreme Court's decision in *Gant*. The Court of Appeals, in an unpublished opinion, dismissed the unlawful possession of methamphetamine charge on the basis of insufficient evidence but affirmed the remaining convictions. *State v. Robinson*, noted at 151 Wn. App. 1030, 2009 WL 2233110, at *1, 2009 Wash. App. LEXIS 1899, at *1-2. The Court of Appeals rejected the unlawful search claim by citing to *State v. White*, 129 Wn.2d 105, 112, 915 P.2d 1099 (1996), for the proposition that a warrantless search incident to arrest is valid. *Robinson*, 2009 WL 2233110, at *12, 2009 Wash. App. LEXIS 1899, at *33. Robinson then filed a petition for review in this court on two issues, one of which was that the search of the vehicle was unconstitutional under *Gant*, and

---

[3] A subsequent search, pursuant to a warrant, disclosed that there was, in fact, a methamphetamine lab in the trunk.

this court granted review of the *Gant* issue only. *State v. Robinson*, 168 Wn.2d 1001, 226 P.3d 780 (2010).

## ISSUE

¶12 May a defendant challenge a search for the first time on appeal following a change in constitutional interpretation?

## ANALYSIS

### A. *Standard of Review*

█ █ ¶13 Issues of constitutional interpretation and waiver are questions of law, which courts review de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

### B. Gant, *Its Progeny, and Their Legal Impact in Washington*

¶14 In *Gant*, the United States Supreme Court announced a new rule governing the automobile search incident to arrest exception to the Fourth Amendment's warrant requirement. The Court held that the exception applies in only two circumstances: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" and (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring)). Though the Court was at pains to explain that its rule was consistent with its earlier decisions in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981),[4] *see Gant*, 556 U.S. at 339-41, it alsoacknowledged

---

[4] We do not concede that *Gant* "did not announce a new rule of law." Dissent at 308. In *Gant*, five justices agreed that the existing rule always permitted the search of an arrestee's vehicle incident to the arrest. 556 U.S. at 351 (Scalia, J.,

that its earlier opinions had "been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 556 U.S. at 341. Washington was one jurisdiction with such an understanding.

¶15 Prior to *Gant*, this court's interpretation of the Fourth Amendment to the United States Constitution, as well as our interpretation of article I, section 7 of the Washington Constitution, permitted warrantless vehicle searches incident to a recent occupant's arrest regardless of the status of the recent occupant. In *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), *overruled by State v. Valdez*, 167 Wn.2d 761, 777, 224 P.3d 751 (2009), eight justices agreed that such searches were permissible. *Stroud*, 106 Wn.2d at 152 (lead opinion) ("During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence."), 174 (Durham, J., concurring) ("A lawful arrest provides Const. art. 1, § 7's required authority of law for a search of an automobile."). In many circumstances where this court had expressly permitted such searches under *Stroud*, *Gant* now prohibits such searches.

¶16 Shortly after *Gant* was decided, we had the opportunity to revisit the search incident to arrest exception to the warrant requirement under article I, section 7 of the Washington Constitution. In *State v. Patton*, we held that under the Washington Constitution, the exception applies only where there is "a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search." 167 Wn.2d 379, 394-95, 219 P.2d 651 (2009); *see*

---

concurring); *id.* at 356-57 (Alito, J., dissenting). Justice Scalia, however, stated that he found a "4-to-1-to-4 opinion" to be "unacceptable," so he indulged the fiction that *Gant* was consistent with *Belton* and *Thornton*. *Id.* at 354 (Scalia, J., concurring). We are not bound by that fiction in interpreting our procedural rules.

*Valdez*, 167 Wn.2d at 777 ("A warrantless search of an automobile is permissible under the search incident to arrest exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest.").

¶17 In sum, prior to *Gant* and *Patton*, we had interpreted the state and federal constitutions to permit warrantless automobile searches incident to arrest whether or not the arrestee had been secured. While the *Gant* majority may be correct that the question was an open one before the United States Supreme Court, that was not the case in Washington. *Gant* and *Patton* constituted a change in law in Washington.

### C.   Gant *and* Patton *Apply Retroactively*

¶18 A preliminary question in this case is whether Millan and Robinson may receive the retroactive benefit of the United States Supreme Court's holding in *Gant* and subsequent related state and federal court decisions. This court follows the rule set forth in *In re Personal Restraint of St. Pierre*, 118 Wn.2d 321, 823 P.2d 492 (1992): " 'A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.' " *Id.* at 326 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)).

¶19 It is not disputed, nor can there be any doubt, that both Millan and Robinson may therefore receive the retroactive benefit of the rules announced in *Gant* and *Patton*. The rules those cases set forth regarding searches of vehicles incident to arrest are undeniably new and relate to the conduct of criminal prosecutions. Both Millan's and Robinson's cases are still pending on direct review. Both petitioners are therefore entitled to the retroactive benefit of the rule.

### D. Issue Preservation Does Not Bar Millan and Robinson from Challenging the Evidence for the First Time on Appeal

¶20 Even though Millan and Robinson are entitled to the substantive benefit of the rules announced in *Gant* and *Patton*, failure to comply with appropriate procedures may nonetheless preclude them from raising the issue. Issue preservation and retroactivity are distinct doctrines.

■ ■ ¶21 The general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal unless the party can show the presence of a " 'manifest error affecting a constitutional right.' " *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (internal quotation marks omitted) (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). This standard comes from RAP 2.5(a), which permits a court to refuse to consider claimed errors not raised in the trial court, subject to certain exceptions. *McFarland*, 127 Wn.2d at 332-33. The principle also predates RAP 2.5(a). *See, e.g.*, *State v. Silvers*, 70 Wn.2d 430, 432, 423 P.2d 539 (1967) ("Failure to challenge the admissibility of proffered evidence constitutes a waiver of any legal objection to its being considered as proper evidence by the trier of the facts."). *But cf. State v. Gunkel*, 188 Wash. 528, 536, 63 P.2d 376 (1936) (excusing failure to object to admissibility of evidence prior to trial where the defendant could not have known the items were unlawfully seized). While RAP 2.5(a) embodies the principle that errors not raised in the trial court may generally not be raised for the first time on appeal, RAP 1.2(a) mitigates the stringency of the rule, providing that the RAPs are to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits."

■ ¶22 The purpose underlying our insistence on issue preservation is to encourage "the efficient use of judicial resources." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Issue preservation serves this purpose by ensuring that the trial court has the opportunity to correct any errors,

thereby avoiding unnecessary appeals. *Id.*; *see McFarland*, 127 Wn.2d at 333 (noting that permitting appeal of all unraised constitutional issues undermines the trial process and results in unnecessary appeals, undesirable retrials, and wasteful use of resources).

¶23 We recognize, however, that in a narrow class of cases, insistence on issue preservation would be counterproductive to the goal of judicial efficiency. Accordingly, we hold that principles of issue preservation do not apply where the following four conditions are met: (1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and (4) the defendant's trial was completed prior to the new interpretation. A contrary rule would reward the criminal defendant bringing a meritless motion to suppress evidence that is clearly barred by binding precedent while punishing the criminal defendant who, in reliance on that binding precedent, declined to bring the meritless motion. The logical result would be the creation of a perverse incentive for criminal defendants to make "a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997).

¶24 We further note that the rationale that failure to raise an issue in the trial court waives its consideration on appeal cannot withstand scrutiny in this context. Waiver of a constitutional right must be "knowing, intelligent, and voluntary." *State v. Stegall*, 124 Wn.2d 719, 724, 881 P.2d 979 (1994). At the time of Millan's and Robinson's trials, the argument that the types of automobile searches at issue here were unconstitutional and that the evidence obtained was therefore suppressible was specifically foreclosed. *Stroud*, 106 Wn.2d at 152 (lead opinion), 174 (Durham, J., concurring). In other words, there was no right to waive at that time. Only by virtue of *Gant* and

*Patton*, and their retroactivity to Millan's and Robinson's cases, is such a right available. Millan's and Robinson's failure to invoke the right prior to its existence was not knowing, intelligent, and voluntary. Thus, there could be no waiver of the right to challenge the search.

¶25 Turning to whether issue preservation applies in this case, we have already concluded that *Gant* and *Patton* effectively overruled the existing constitutional interpretation announced in *Stroud*, setting forth a new constitutional interpretation relating to the search incident to arrest exception to the warrant requirement. That new interpretation, as discussed, applies retroactively to Millan's and Robinson's cases. Moreover, the trials for both Millan and Robinson had concluded prior to the decisions in *Gant* and *Patton*. Therefore, issue preservation is simply not applicable. As a result, there is no requirement that Millan and Robinson demonstrate the existence of a "manifest error affecting a constitutional right." RAP 2.5(a)(3). We therefore reverse the Court of Appeals decision in *Millan*.

### E. Suppression Hearings Are Necessary

¶26 The records in the cases before us do not allow us to conclude that the searches were justified by the search incident to arrest exception to the warrant requirement. However, because neither the petitioners nor the State had the incentive or opportunity to develop the factual record before the trial court, the appropriate remedy is to remand each case to the trial court for a suppression hearing.

¶27 In Millan's case, Millan was in the back of the police car at the time the search took place. Officer safety therefore does not seem to justify the search incident to arrest. Moreover, it appears that the crime of arrest was driving with a suspended license. There is no indication that the search was for evidence of that crime that could be concealed or destroyed. The warrantless search that took place therefore does not appear to fit within the search incident to arrest exception to the warrant requirement.

¶28 In Robinson's case, the record reflects that, at the time of the search, both Robinson and Smith were in police custody, whether inside or outside the police vehicle. The arresting officer testified at trial that the crime of arrest was reckless driving. There is no reason to believe the vehicle would contain evidence of this offense. We cannot conclude that this warrantless search was justified by the search incident to arrest exception either. On this basis, we reverse the Court of Appeals holding that the search in Robinson's case was a valid search incident to arrest.

¶29 The inquiry does not end here, however. There may be additional facts justifying the search incident to arrest, which the State had no incentive to develop. Further, even if the search incident to arrest exception to the warrant requirement does not apply, other exceptions to the warrant requirement may. Again, because, at the time of trial, the evidence was admissible under then-existing interpretations of the state and federal constitutions, there was no incentive for the State to develop the record with respect to other exceptions to the warrant requirement.

¶30 We therefore remand these two cases to the superior court for suppression hearings. At these hearings, both the State and the petitioners will be permitted to further develop the record. If the trial court finds that the evidence was admissible, the conviction stands affirmed. If, on the other hand, the trial court finds the evidence was inadmissible, it must then determine whether the remaining evidence was sufficient to uphold the conviction. If so, the conviction is affirmed. If not, the conviction is reversed.

## CONCLUSION

¶31 We hold that principles of issue preservation, as embodied in RAP 2.5(a), do not apply where (1) a court issues a new controlling constitutional interpretation material to the defendant's case, (2) that interpretation overrules an existing controlling interpretation, (3) the new interpretation applies retroactively to the defendant, and

(4) the defendant's trial was completed prior to the new interpretation. As these criteria are met in both Millan's and Robinson's cases, their raising the admissibility of evidence under *Gant* and *Patton* for the first time before the Court of Appeals and this court, respectively, are permissible. We remand both cases to the trial court for suppression hearings.

C. JOHNSON, ALEXANDER, CHAMBERS, FAIRHURST, and STEPHENS, JJ., and SANDERS, J. PRO TEM., concur.

¶32 MADSEN, C.J. (dissenting) — I am not persuaded that the decisions in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), and *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009), constitute a change in law and thus exempt petitioners Francisco Millan and Michael Robinson from ordinary issue preservation requirements. Accordingly, petitioners must show manifest constitutional error to challenge the searches of their respective vehicles for the first time on appeal. However, without a more developed record, petitioners cannot establish actual prejudice and thus cannot make the requisite showing of manifest constitutional error. Because I would hold that the issue preservation doctrine precludes us from reviewing petitioners' claims of error on direct review, I respectfully dissent.

¶33 "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); *cf. In re Pers. Restraint of Markel*, 154 Wn.2d 262, 270, 111 P.3d 249 (2005) ("A 'new rule' is one that 'breaks new ground' or 'was not *dictated* by precedent existing at the time the defendant's conviction became final.' " (quoting *Teague*, 489 U.S. at 301)). The United States Supreme Court did not announce a new rule of law in *Gant*. To the contrary, the holding in *Gant*, namely that a vehicle search incident to

arrest is lawful only when the arrestee is within reaching distance of the vehicle, simply reaffirmed a well-established—though often misapplied—principle; existing precedent at the time of petitioners' trial required no less. *Gant*, 556 U.S. at 343; *see Markel*, 154 Wn.2d at 270. In other words, *Gant* neither broke new ground nor imposed a new obligation on the State. *See Teague*, 489 U.S. at 301.

¶34 In *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the United States Supreme Court set forth what has been and remains the governing standard for a search incident to arrest under the Fourth Amendment. After identifying the twin rationales for the search incident to arrest exception to the warrant requirement—namely preventing an arrestee from gaining access to a weapon and preventing the destruction or concealment of evidence—the Court limited the scope of such a search to "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." *Id.* at 763.

¶35 Despite widely held misconceptions, the Court did not depart from the "immediate control" standard when it decided *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). While that case has been cited for the notion that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m],'" this faulty empirical assumption goes to the application of the "immediate control" standard, not the standard itself. *Id.* at 460 (alteration in original) (quoting *Chimel*, 395 U.S. at 763). Indeed, the Court expressly noted that its holding concerned only the application of *Chimel* to a specific set of facts and did not disturb the rule of law announced in *Chimel*. *Belton*, 453 U.S. at 460 n.3 ("Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context. It in no way alters the fundamental prin-

ciples established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.").

¶36 In *Gant*, 556 U.S. at 340-41, the Court clarified its holding in *Belton*, noting that while the outcome in that case rested on an erroneous empirical assumption, *Chimel* remained good law.

> Under [a] broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—-a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." [*Belton*,] 453 U. S., at 460, n. 3. Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

*Id.* at 343. The Court also held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring in judgment)).[5]

¶37 Nor did *Gant* and its progeny effect a change of law in this state. In *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240

---

[5] While the *Gant* majority clearly stated that its holding did not constitute a change of law, a majority of this court would disregard this language in light of Justice Scalia's concurrence. Majority at 301 n.4. However, Justice Scalia did sign the lead opinion, and in so doing, he explicitly endorsed not only the majority rule but also the majority's narrow reading of *Belton*. *Gant*, 556 U.S. at 354. Had Justice Scalia wished to endorse only the result of the lead opinion, he could have filed a concurring opinion without signing the lead opinion. Alternatively, had he wished to endorse only certain components of the majority's reasoning, he could have joined the majority except as to certain sections. He exercised neither of these options.

(1983), we set forth the permissible scope of a search incident to arrest under our state constitution. Echoing *Chimel*, we held that under Washington Constitution article I, section 7, "when a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control." *Ringer*, 100 Wn.2d at 699. We further held that "[a] warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee for the crime for which he or she is arrested." *Id.* We also adopted a "totality of circumstances" analysis to determine whether the doctrine of exigent circumstances provides an exception to the warrant requirement. *Id.* at 701.

¶38 It is true, as the majority notes, that in *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), *overruled by State v. Valdez*, 167 Wn.2d 761, 777, 224 P.3d 751 (2009), this court allowed automobile searches incident to arrest without regard to the arrestee's actual proximity to the vehicle in question. However, just as the *Belton* Court did not abandon the "immediate control" standard set forth in *Chimel*, the *Stroud* court adhered to the parallel standard announced in *Ringer*.

¶39 The lead opinion[6] in *Stroud* began by recognizing that under *Ringer*, " '[a] warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested.' " *Stroud*, 106 Wn.2d at 150 (alteration in original) (quoting *Ringer*, 100 Wn.2d at

---

[6] In *Stroud*, while the court was unanimous as to the result, only four justices signed the lead opinion, which excluded locked containers from the permissible scope of a search incident to arrest. The four justices who signed the concurring opinion would not have excluded locked containers and the ninth justice concurred in result only. 106 Wn.2d 144. However, this court later adopted the categorical rule appearing in the lead opinion of *Stroud*. *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989) (reasoning that a purse is not a "locked container" and thus upholding search of purse found in passenger compartment of arrestee's vehicle).

699). Next, without rejecting the standard itself, the lead opinion went on to reject the fact-dependent totality of circumstances approach that the *Ringer* court had adopted to apply that standard, just as the *Belton* Court had eschewed a fact-intensive, case-by-case analysis in favor of a sweeping empirical assumption. *Id.* at 151 ("Weighing the 'totality of circumstances' is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection . . . . We agree with the Supreme Court's decision to draw a clearer line to aid police enforcement . . . ."). In place of a totality of circumstances analysis, the lead opinion adopted a bright line rule to determine whether a search incident to arrest fell within the scope authorized in *Ringer* and adequately protected the arrestee's privacy.

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

*Id.* at 152. In reasoning that this categorical rule comported with the underlying rationale for the search incident to arrest exception, the lead opinion signaled its continued adherence to *Ringer. Id.* ("[T]he danger that the individual either could destroy or hide evidence located within the container or grab a weapon is minimized."); *see Ringer*, 100 Wn.2d at 699 (authorizing search incident to arrest only when necessary to remove weapons or prevent the destruction of evidence).

¶40 In *Patton*, 167 Wn.2d at 394-95, we reaffirmed the limited scope of the search incident to arrest exception for automobile searches, holding that such a search is unlawful "absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search." In so

holding, however, we noted that we were not announcing a new rule but rather a new application of an existing rule.

> While we believe this holding is consistent with the core rationale of our cases, we also recognize that we have heretofore upheld searches incident to arrest conducted after the arrestee has been secured and the attendant risk to officers in the field has passed. Today, we expressly disapprove of this expansive *application* of the narrow search incident to arrest exception.

*Id.* at 395 (emphasis added).

¶41 In sum, just as the Court in *Belton* had labored under a sweeping, and ultimately erroneous, empirical assumption in applying the *Chimel* standard to a particular set of factual circumstances, the lead opinion in *Stroud* (and the cases that followed) relied on the flawed empirical assumption that a search of the passenger compartment that excluded locked containers would fall within the permissible scope set forth in *Ringer*. Because the underlying standard, namely the "immediate control" standard, has remained constant under state and federal law, neither *Gant* nor *Patton* constituted a change in law.

¶42 Accordingly, the majority errs in concluding that petitioners had no basis to challenge the searches at issue at the time of trial. To the contrary, because the "immediate control" standard predated *Gant* and *Patton*, petitioners had every opportunity to move for suppression under existing case law at the time of trial. In fact, relying on *Chimel* and *Stroud*, Robinson challenged the scope of the search incident to arrest in a statement of additional grounds *before* the United States Supreme Court handed down the *Gant* decision. Clearly, nothing prevented him from doing so at trial. *See* Statement of Additional Grounds at 35-36 (citing *Stroud*, 106 Wn.2d at 152-53; *Chimel*, 395 U.S. 752). Indeed, Gant had only pre-*Gant* case law at his disposal, and he prevailed; so too did Patton.

¶43 Because these circumstances do not warrant an exception to the well-established doctrine of issue preser-

vation, petitioners are left to contend with the ordinary restrictions on raising unpreserved issues on appeal. As the majority notes, when a party fails to raise an issue at trial, it generally waives the right to raise the issue on appeal, absent a showing of a " 'manifest error affecting a constitutional right.' " *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (internal quotation marks omitted) (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)); *see also* RAP 2.5(a) ("Errors Raised for First Time on Review").

¶44  To establish manifest constitutional error, a criminal defendant must identify a constitutional error and make a showing that the error negatively affected his or her rights at trial. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). "It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *Id.* at 927 (citing *McFarland*, 127 Wn.2d at 333; *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988)). This principle reflects the pragmatic concern that " 'permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts'." *McFarland*, 127 Wn.2d at 333 (quoting *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992)).

¶45 As the majority recognizes, the record in each of these cases is insufficient to determine the legality of the warrantless searches at issue because neither defendant challenged the vehicle search at trial. In particular, it is not only unclear whether a search incident to arrest was lawful under the factual circumstances of either case but also whether other exceptions to the warrant requirement may have applied. In the absence of suppression hearings, the State had no opportunity to defend the legality of these vehicle searches under any of these exceptions. We may not consider facts outside the record on direct review. *Id.* at 335. Instead, the proper mechanism for raising claims of

error that rest on facts outside the record is a personal restraint petition. *Id.* at 338; RAP 16.4(c)(3).

¶46 Thus, "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333; *see also State v. Kirkpatrick*, 160 Wn.2d 873, 881, 161 P.3d 990 (2007) (finding no manifest constitutional error where record was insufficient to establish actual prejudice).

¶47 Having determined that the issue preservation doctrine did not bar petitioners from challenging these warrantless searches for the first time on appeal, the majority proceeds to remand both cases to the superior court for suppression hearings. However, in the absence of a threshold showing of manifest constitutional error, it is inappropriate to remand these cases for further proceedings. *McFarland*, 127 Wn.2d at 338 (declining to review unpreserved error where record was insufficient to establish manifest constitutional error and declining to remand for further development of record on ineffective assistance claim).

¶48 Because it erred in concluding that *Gant* and *Patton* marked a change in law, the majority has no valid basis for exempting petitioners from ordinary issue preservation requirements. Absent a showing of manifest constitutional error, we cannot review new claims that were fully available at the time of trial but raised for the first time on appeal nevertheless. On these records, neither petitioner can make such a showing. I would hold, however, that if petitioners wish to rely on facts outside the record to establish a constitutional claim, a personal restraint petition is the appropriate avenue for relief. Thus, I respectfully dissent.

J.M. JOHNSON, J., concurs with MADSEN, C.J.