FILED
COURT OF APPEALS
DIVISION II

2013 NOV 26 AM 9: 09

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43290-1-II |
| Respondent, | |
| v. | |
| RONALD WILLIAM McNEAL, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Ronald McNeal appeals his convictions for methamphetamine possession and methamphetamine delivery. He argues: (1) the trial court violated the right to a public trial by discussing jury instructions with counsel in chambers and by responding to a jury question in a closed courtroom, (2) the admission of a criminal docket notice bearing his name violated his due process rights, (3) his counsel was ineffective by failing to object to the criminal docket notice and by failing to propose a jury instruction limiting the use of that evidence, and (4) the accomplice liability statute is unconstitutionally overbroad.

We affirm and hold that (1) under *State v. Sublett*, 176 Wn.2d 58, 75-77, 292 P.3d 715 (2012), discussing jury instructions and responding to jury questions does not implicate the public trial right; (2) McNeal did not object to the admission of the criminal docket notice and we will not review an evidentiary challenge made for the first time on appeal; (3) McNeal's ineffective assistance of counsel claim fails because he cannot show that the admission of the criminal docket notice prejudiced him and because defense counsel's failure to request a limiting

instruction may have been a legitimate trial tactic; and (4) under *State v. Ferguson*, 164 Wn. App. 370, 375-76, 264 P.3d 575 (2011), *review denied*, 173 Wn.2d 1035 (2012), the accomplice liability statute is not overbroad.

## FACTS

On November 16, 2011, an informant working with Centralia police made a controlled purchase of methamphetamine from Ronald McNeal at McNeal's residence, which was a trailer owned by Donald Pender. The officers obtained a search warrant for Pender's trailer and executed it the following day. When the officers arrived at the trailer to execute the warrant, they arrested McNeal and his girl friend, Roxanne Chipman. The search revealed a backpack in the trailer's bedroom containing a small "baggie" of methamphetamine, a man's hygiene kit, a set of clothes, and two prescription bottles bearing McNeal's name. Officers also discovered a canvas bag containing two digital scales, numerous baggies with a pit bull logo on them identical to the one the officers received from the informant, a methamphetamine smoking device, and a larger baggie containing methamphetamine. The officers found paperwork in the bedroom bearing McNeal's name, including a Lewis County Superior Court criminal docket notice.

The State charged McNeal with unlawful possession of a controlled substance – methamphetamine – and delivery of methamphetamine.

At trial, the State introduced a copy of the criminal docket notice to McNeal that the officers found in Pender's trailer as evidence to establish McNeal's control over the trailer. The notice stated, "This is to notify you that the above entitled matter has been set for: . . . Sentencing hearing: / formal entry of J & S . . . . " Ex. 37 (capitalization omitted). McNeal did not object or request a limiting instruction.

During a recess on the second day of trial, the trial court told counsel on the record that it would meet with them in chambers to discuss jury instructions. After the recess, the trial court returned and stated on the record, "All right. We're back on State versus McNeal after a recess for the jury instructions. I prepared a set of jury instructions that are basically as proposed." Report of Proceedings (Mar. 14, 2012) at 121. The trial court then asked whether counsel had the opportunity to review the instructions, and counsel responded that they had and that there were no objections.

The State claimed that McNeal and Chipman were accomplices in the crime of unlawful methamphetamine delivery, and the trial court instructed the jury on accomplice liability.

During deliberations the trial court received the following question from the jury, "Was finger prints [sic] taken on scales? DNA on pipe? [A]re there phone records or confiscate [sic] his phone for incoming calls to Hayden['s] phone[?]" Clerk's Papers (CP) at 55. On a printed form stating that the trial court had consulted with counsel, the trial court instructed the jury, "You have all of the evidence that was admitted." CP at 55. There is no indication that either the discussion with counsel or the written response occurred in open court.

A jury found McNeal guilty as charged, and he appeals.

## ANALYSIS

### A.   PUBLIC TRIAL RIGHT

McNeal argues that the trial court violated the right to a public trial by meeting with counsel in chambers to discuss jury instructions and a jury question and by responding to the jury

question in closed court.[1] We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review this issue de novo. *Wise*, 176 Wn.2d at 9.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *Sublett*, 176 Wn.2d at 71. "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71. In *Sublett*, our Supreme Court adopted a two-part "experience and logic" test to address this issue: (1) whether the place and process historically have been open to the press and general public (experience prong) and (2) whether public access plays a significant positive role in the functioning of the particular process in question (logic prong). 176 Wn.2d at 72-73. Only if both questions are answered in the affirmative is the public trial right implicated.[2] *Sublett*, 176 Wn.2d at 73.

*Sublett* is dispositive. In *Sublett*, the trial court responded in chambers to a jury question regarding one of the instructions with only counsel present. 176 Wn.2d at 67. The question and response were then put in the record. *Sublett*, 176 Wn.2d at 67. Our Supreme Court determined that a judge's discussion with the parties about jury questions and any response was not

---

[1] McNeal did not object when informed that the trial court had discussed the jury instructions in chambers or to the trial court's written statement regarding the jury question. However, "a defendant does not waive his right to a public trial by failing to object to a closure at trial." *State v. Wise*, 176 Wn.2d 1, 15, 288 P.3d 1113 (2012). Accordingly, we address this issue despite the absence of McNeal's objection below.

[2] Our Supreme Court has held that a personal restraint petitioner has the burden of satisfying the experience and logic test. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013). It remains unclear whether the same rule applies in a direct appeal.

historically a proceeding to which the public trial right attached. *Sublett*, 176 Wn.2d at 77. In reaching this conclusion, the court also compared the trial court's response to the jury question to in-chambers conferences to discuss jury instructions, which historically have not been held in open court. *Sublett*, 176 Wn.2d at 75.

Consistent with *Sublett*, we hold that both the trial court's in-chambers discussion regarding jury instructions and the trial court's resolution of the jury question fail the experience prong of the *Sublett* test. Therefore, they were not proceedings to which the public trial right attached, and McNeal's public trial right claim fails.

B.    ADMISSION OF CRIMINAL DOCKET NOTICE

McNeal argues that the trial court violated his due process rights because the admission of his criminal docket notice, coupled with the absence of an instruction limiting the use of that evidence, allowed the jury to convict him based in part on propensity evidence. Although he did not object to this evidence below, he argues that this was a manifest error affecting a constitutional right that we may review for the first time on appeal under RAP 2.5(a)(3). We disagree.

McNeal did not object to either the admission of the criminal docket notice or to the jury instructions. Although generally we will not review a claim of error raised for the first time on appeal, RAP 2.5(a)(3) permits a party to raise such a claim if it amounts to a "manifest error affecting a constitutional right." "Issues of constitutional interpretation and waiver are questions of law, which courts review de novo." *State v. Robinson*, 171 Wn.2d 292, 301, 253 P.3d 84 (2011).

To determine the applicability of RAP 2.5(a)(3), we first must determine whether the alleged error is constitutional. *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). McNeal

argues that the admission of the criminal docket notice violated his due process rights because the trial court did not instruct the jury to consider the evidence for its intended purpose, which permitted the jury to consider it as substantive evidence of guilt. In support of this argument, McNeal relies on *Garceau v. Woodford*, 275 F.3d 769 (9th Cir. 2001), *overruled on other grounds by Woodford v. Garceau*, 538 U.S. 202, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003). In *Garceau*, the trial court admitted evidence of the defendant's past crimes and instructed the jury that it could consider that evidence for any purpose, including the defendant's " 'character or any trait of his character' " and " 'conduct on a specific occasion.' " 275 F.3d at 773. The court held that this instruction allowed the jury to consider past crimes to prove the defendant's propensity to commit the crime at issue and violated the defendant's due process rights. *Garceau*, 275 F.3d at 775.

McNeal argues that the trial court violated his due process rights because, as in *Garceau*, the trial court's instructions permitted the jury to use his criminal docket notice to show that he had the propensity to commit the crimes with which he was charged. The challenged instruction provided: "In order to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted that relates to the proposition." CP at 32. However, unlike the instruction in *Garceau*, this instruction did not reference evidence of other crimes and did not explicitly instruct the jury that the criminal docket notice could be used to prove McNeal's conduct on a specific occasion. Accordingly, we hold that there was no due process issue raised by the admission of the criminal docket notice.

In the absence of any due process issue, McNeal's claim relates only to the admission of ER 404(b) evidence. An alleged evidentiary error, including an erroneous admission of ER 404(b) evidence, is not an error of constitutional magnitude. *Powell*, 166 Wn.2d at 84.

6

Accordingly, we hold that RAP 2.5(a)(3) does not apply and decline to review McNeal's claim for the first time on appeal.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

McNeal argues that his counsel was ineffective for failing to object to the introduction of the criminal docket notice, for failing to request that it be redacted, and for failing to propose a limiting instruction regarding the notice. We disagree.

1.     Standard for Ineffective Assistance

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The failure to show either element ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33. To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of

establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

"The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Therefore, we presume that "the failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Madison*, 53 Wn. App. at 763. In order to show that defense counsel was ineffective for failing to make a particular objection, the defendant must show that (1) failure to object fell below an objective standard of reasonableness, (2) the proposed objection would likely have been sustained, and (3) the result of the trial would have differed had the objection been made. *Grier*, 171 Wn.2d at 33;

2. Failure To Object

The trial court admitted, without objection, a criminal docket notice for McNeal stating that he had an upcoming court date for a sentencing hearing. McNeal argues that this evidence was inadmissible under ER 402, ER 403, and ER 404(b). Therefore, he argues, there was no strategic reason for trial counsel not to object to or to seek redaction of the document, and the trial court likely would have sustained an objection to its introduction. However, here the evidence was admissible to show McNeal's control over items found in the search and likely would have been admitted.

Under ER 402, relevant evidence is generally admissible. Evidence is "[r]elevant" if it makes "the existence of any fact that is of consequence to the determination of the action more

8

probable or less probable." ER 401. Officers discovered the document on the nightstand in the trailer's bedroom where officers discovered McNeal's canvas bag and backpack containing methamphetamine. The existence of papers bearing McNeal's name in the room in which the drugs and drug paraphernalia were found was relevant to show McNeal's occupancy of the room and possession of the items within it. Accordingly, the trial court would not have sustained an objection to the evidence on this ground.

It also was unlikely that the trial court would have sustained an ER 403 objection. Under ER 403, otherwise relevant evidence can be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." Because there was conflicting testimony at trial regarding whether McNeal was living in the trailer's bedroom at the time the contraband was discovered, the evidence was highly probative of his occupancy. And the danger of unfair prejudice was not great. The docket notice did not state the type of conviction for which McNeal was being sentenced, other than that it was a criminal conviction. Although this evidence may have been prejudicial, it was not so prejudicial that the trial court would likely have sustained an objection given the document's relevance.

> Finally, it is unlikely that the trial court would have excluded the evidence under ER 404(b). Under ER 404(b), [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The list of other purposes for which evidence of a defendant's prior misconduct may be introduced is not exclusive. *State v. Baker*, 162 Wn. App. 468, 473, 259 P.3d 270, *review denied*, 173 Wn.2d 1004 (2011).

Here, the State introduced the evidence not to show McNeal's conformity with previous criminal behavior but, rather, to show that he occupied the bedroom where the contraband was discovered. And as already discussed, the trial court was unlikely to find that the probative value of the evidence was outweighed by the danger of unfair prejudice. Accordingly, the trial court would not have sustained an objection to the evidence on any of the grounds McNeal asserts.

McNeal also fails to show that the docket notice's admission prejudiced him in light of the overwhelming evidence against him. McNeal sold methamphetamine to an informant in a controlled buy monitored by police officers. Upon executing a search warrant on the trailer in which McNeal was living, officers discovered methamphetamine and drug paraphernalia in a room containing documents belonging to McNeal and in a canvas bag belonging to McNeal containing two prescription pill bottles bearing his name.

McNeal has failed to show how the admission of the criminal docket notice requiring his presence at a sentencing hearing for an unspecified crime affected the outcome of the case in light of this overwhelming evidence against him. Therefore, McNeal cannot show that he was prejudiced by his trial counsel's failure to object to the document or to request that it be redacted.

We hold that the failure to object to admission of the criminal docket notice did not constitute ineffective assistance of counsel because the trial court likely would not have sustained such an objection and McNeal cannot show that admission of the docket notice prejudiced him.

3. Failure To Redact

McNeal also argues that his counsel was ineffective for failing to request that the criminal docket notice be redacted. We disagree.

Although McNeal fails to specify which portions of the docket notice should have been redacted, we assume that he refers to the portions of the docket referencing his involvement in criminal activity. Those portions included the caption stating that it was a "criminal" docket notice and that there was to be a "sentencing hearing: / formal entry of J&S." Ex. 37. However, the problem with redaction is that it could have allowed the jury to speculate as to the purpose of the court document, leading to confusion and possibly greater prejudice to McNeal. Therefore, it may have been a legitimate trial tactic for McNeal's counsel to have declined to seek redaction of those portions of the docket notice.

We hold that failing to request redaction of the criminal docket notice did not constitute ineffective assistance of counsel.

4. Failure To Propose Limiting Instruction

McNeal argues that his counsel was ineffective for failing to propose an instruction prohibiting the jury from considering the criminal docket notice as evidence of McNeal's propensity to engage in criminal behavior. We disagree.

McNeal argues that his counsel should have proposed an instruction based on WPIC 5.30, which provides, "Certain evidence has been admitted in this case for only a limited purpose. This [evidence consists of _____ and] may be considered by you only for the purpose of _____ . You may not consider it for any other purpose." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.30, at 180 (3d ed. 2008) (WPIC) (boldface omitted) (alterations in original). However, whether to request a limiting

11

instruction is a matter of trial tactics. *State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009). Failure to propose the instruction could have been a legitimate trial tactic because had defense counsel proposed this instruction, he could have risked reemphasizing the evidence. *See Yarbrough*, 151 Wn. App. at 90 ("[F]ailure to request a limiting instruction for evidence admitted under ER 404(b) may be a legitimate tactical decision not to reemphasize damaging evidence.").

We hold that the failure to request a limiting instruction relating to the criminal docket notice did not constitute ineffective assistance of counsel.

D. ACCOMPLICE LIABILITY STATUTE AND INSTRUCTION

The State claimed that McNeal and Chipman were accomplices in the crime of unlawful methamphetamine delivery, and the trial court instructed the jury on accomplice liability. McNeal argues that Washington's accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad because it criminalizes speech protected by the First Amendment. He also challenges the trial court's accomplice liability instruction for the same reason. We disagree.

1. Statute

We presume that statutes are constitutional and review challenges to them de novo. *State v. Lanciloti*, 165 Wn.2d 661, 667, 201 P.3d 323 (2009). Under RCW 9A.08.020(3)(a), a person is guilty as an accomplice if "[w]ith knowledge that it will promote or facilitate the commission of [a] crime," he "[s]olicits, commands, encourages, or requests [another] person to commit [the crime]" or "[a]ids or agrees to aid such other person in planning or committing [the crime]." McNeal argues that Washington's accomplice liability statute does not meet the standard set forth in *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed .2d 430 (1969), in

12

which the United States Supreme Court held that the First Amendment protects speech advocating criminal activity unless it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Because "aid" is not defined in the statute, McNeal argues that the statute criminalizes speech other than that " 'directed to inciting or producing imminent lawless action.' " Br. of Appellant at 27 (quoting *Brandenburg*, 395 U.S. at 447).

We rejected this same challenge in *Ferguson*. 164 Wn. App. at 375–76 (citing *State v. Coleman*, 155 Wn. App. 951, 960–61, 231 P.3d 212 (2010)). In *Coleman*, Division One of this court held that

> [t]he accomplice liability statute . . . requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge that the aid will further the crime. Therefore, by the statute's text, its sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime.

155 Wn. App. at 960-61. In *Ferguson*, we adopted the reasoning in *Coleman* and addressed the *Brandenburg* standard, holding that "[b]ecause the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." 164 Wn. App. at 376. We adhere to our decision and analysis in *Ferguson* and hold that McNeal's challenge to the accomplice liability statute fails.

2. Instruction

McNeal also argues that the trial court's accomplice liability instruction was erroneous because its definition of "aid" violated the *Brandenburg* rule. We review jury instructions de novo and in the context of the instructions as a whole. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

13

The trial court's accomplice liability instruction, modeled after WPIC 10.51, defined "aid" as

> all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

CP at 46. *See* WPIC 10.51, at 217. McNeal argues that the instruction's inclusion of "words" or "encouragement" in the definition of "aid" was contrary to *Brandenburg* because it criminalized "a vast amount of pure speech." Br. of Appellant at 28.

But the trial court's accomplice liability instruction contains the same mens rea requirement as the statute. Therefore, regardless of the definition of "aid", the instruction as a whole passes constitutional muster because any aid, including "words" or "encouragement", must be given with knowledge that it will further the crime. *See Coleman*, 155 Wn. App. at 960-61. Accordingly, applying the reasoning in *Ferguson* and *Coleman*, we hold that the trial court's accomplice liability instruction was not erroneous.

No. 43290-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

PENOYAR, P.J.

SCHINDLER, J.